IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 12-30005 |
| JAMES STOUT, ) | |
| Defendant. ) | |

OPINION

RICHARD MILLS, United States District Judge:

James Stout seeks compassionate release.

I.

The Defendant moves--pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020), the Second Chance Act of 2007 and 18 U.S.C. § 3621, for compassionate release--and further that the Court exercise its discretion in considering that he be released to an early period of home confinement.

Following a guilty plea to one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) and one count of Possessing Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), Defendant James Stout

1

was sentenced on December 7, 2012 to a term of 156 months imprisonment. The sentence was within the calculated guideline range of 151-188 months. According to the Presentence Investigation Report prepared in advance of sentencing, the Defendant was held accountable for 68,061 images of child pornography, which included 8 to 10-year-old girls performing oral sex on adult males and dogs. He also filmed, via a wireless pinhole video camera, a 9-year old girl taking a bath at his residence.

The Government notes that in February 2020, the Defendant asked to be removed from the Bureau of Prisons ("BOP") Sex Offender Treatment Program waitlist. The Defendant is serving his sentence at FCI Elkton with a projected release date of February 9, 2023.

The Defendant's Commentary notes that FCI Elkton has experienced an epidemic of confirmed coronavirus cases that has not improved over time. According to the BOP website, as of July 30, 2020, 76 inmates and two staff members have active confirmed cases of the virus and there have been nine inmate deaths. www.bop.gov/coronavirus (last visited July 30, 2020). The website reports 926 inmates and 51 staff members have recovered. *Id.*

Since President Trump signed the First Step Act into law on December 21, 2018, defendants may now bring their motions for compassionate release after

exhausting administrative remedies within the Bureau of Prisons ("BOP").  *See* 18 U.S.C. § 3582(c)(1)(A).  The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary and compelling reasons" once "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]."  *See*  18 U.S.C. § 3582(c)(1)(A)(i).  If a court finds that "extraordinary and compelling reasons warrant such a reduction," it may reduce the defendant's imprisonment term after considering any applicable factors under 18 U.S.C. § 3553(a).  *See id*.

On May 22, 2020, the BOP denied the Defendant's request for compassionate release.  Therefore, he has exhausted his administrative remedies.

According to a BOP Health Services Administrative Note, the Defendant was tested for COVID-19 on May 22, 2020.  He tested positive and was placed in isolation on May 27, 2020.  The Defendant voiced no complaints during his isolation period and was released from isolation on June 12, 2020.

The Defendant, a 56-year old man, does not currently suffer from any of the health conditions explicitly identified by the Centers for Disease Control and Prevention (CDC).  His age places him at a greater risk than those younger than he,

which means he should take extra precautions. [www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults](www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults). The Defendant suffers from asthma and uses an albuterol inhaler daily, which might place him at risk. [www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions](www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions). The Defendant states it has been discovered that his lungs contain masses that cause him pain and respiratory issues, derived from his years employed in construction and farm work from exposure to brick and grain dust. Based on the excessive numbers of coronavirus cases and deaths at FCI Elkton, his age and uncertain respiratory health coupled with circumstances created by the current pandemic, the Defendant claims the Court should exercise its discretion in considering his release to an early period of home confinement.

As of July 30, 2020, 103 inmates and one BOP staff member have died due to COVID-19, while 7,429 inmates and 683 staff have recovered. [www.bop.gov/coronavirus](www.bop.gov/coronavirus). The Defendant's motion notes that most of the deceased inmates, like the Defendant, were under the age of 65. Several of those now-deceased inmates had no pre-existing conditions at all.

II.

Soon after President Trump declared the COVID-19 outbreak in the United States a national emergency, the Attorney General directed the BOP to prioritize the

use of existing statutory authorities to transfer to home confinement those at-risk inmates who are non-violent and pose minimal risk of recidivism.  Under the recently-enacted CARES Act, during the "covered emergency period" of this national emergency, "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

On April 3, 2020, the Attorney General made the finding that emergency conditions are materially affecting the functioning of the BOP, thereby allowing the BOP Director to review all inmates for home confinement.  The Attorney General's Memorandum explained that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations."  The Defendant notes there have been calls from legal experts for the Attorney General to expand the home confinement program even further. Moreover, multiple United States Senators have recently voiced concern over BOP's attempts to curb the spread of the virus and their non-responsiveness to the call to release medically vulnerable inmates.

The Defendant notes that the danger of contracting COVID-19 while in BOP custody is statistically profound and urgent, particularly at FCI Elkton. Moreover, Defendant may stand at high risk for experiencing serious complications from the disease due to his age, asthma and lung masses. He contends, therefore, these factors present an extraordinary and compelling basis for a sentence reduction.

The Defendant claims that a sentence reduction to time served followed by a term in a halfway house as a condition of supervised release is "sufficient, but not greater than necessary," to satisfy the statutory purposes of sentencing.

The Government claims that Defendant is receiving adequate health care and notes he has recovered from the COVID virus. Although much is still unknown, recent studies suggest that "most patients who recover have neutralizing antibodies—the type of antibody that confers immunity and protects people from getting sick again." www.healthline.com/health-news/people-reinfected-with-covid-19-werent-infectious  "The report also found that the vast majority of recovered patients (96 percent) had neutralizing antibodies indicating that they conferred immunity." *Id*. Accordingly, it would appear that Defendant is not likely at risk of contracting COVID-19 again.

The Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission."

18 U.S.C. § 3582(c)(1)(A). The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

Since passage of the First Step Act, the Sentencing Guideline policy statement has not been updated to reflect that defendants (and not only the BOP) may move for compassionate release but courts have turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *See United States v. Weatherspoon*, 2020 WL 3803035, at *3 (S.D. Ind. July 7, 2020) (citations omitted). The applicable guideline instructs that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release and the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act. *See* U.S.S.G. § 1B1.13. Application Note 1 states that extraordinary and compelling reasons exist if the defendant is "suffering from a serious physical or medical condition," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, comment (n.1).

Certainly, the COVID-19 pandemic is in and of itself an extraordinary and unprecedented event in our lifetimes. However, "the mere existence of COVID-19 in society and possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). "Perhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020); *see also United States v. Johnson*, 2020 WL 2573239, at *4 (C.D. Ill. May 21, 2020).

There is no question that FCI Elkton experienced one of the most serious outbreaks of any BOP facility. There is still a high number of active confirmed cases (78 among inmates and staff) at FCI Elkton. However, the number is significantly lower than at the time of the Defendant's motion when 362 inmates and 3 staff members had active confirmed cases. There have been over 1,000 positive cases at FCI Elkton, which is well over half of the inmate population. It appears that the FCI Elkton is doing a better job of containing the outbreak than in recent weeks.

While the Court recognizes that there is no proven immunity effect after recovery, studies suggest that the Defendant is not likely at risk of contracting

COVID-19 again.  It is certainly true that FCI Elkton was not able to contain the outbreak for at least two months.  Based on the number of active, confirmed cases at FCI Elkton now compared to the number in recent weeks, the institution is doing a better job containing the outbreak even though more than 4% of the inmate population is currently positive for COVID-19.  Although the Defendant suffers from a condition that might place him at risk, he does not suffer from any conditions explicitly identified by the CDC as creating a high risk from the virus.

Based on the foregoing reasons, the Court concludes that Defendant has not established extraordinary and compelling reasons that warrant compassionate release.

Ergo, the Amended Motion for Compassionate Release of Defendant James Stout [d/e 30] is DENIED.

The Clerk will terminate the Defendant's Pro Se Motion for Compassionate Release [d/e 27].

ENTER: August 3, 2020

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge